Jack D. WALKER and Nowena J. Walker *v.* Donald L. HUBBARD and Betty Lee Hubbard

CA 89-435                                                      787 S.W.2d 251

Court of Appeals of Arkansas
Division II
Opinion delivered April 18, 1990

*Martin, Vater, Karr & Hutchinson*, by: *Charles Karr*, for appellants.

*Willard Crane Smith, Jr.*, for appellees.

GEORGE K. CRACRAFT, Judge. Jack and Nowena Walker appeal from an order of the Sebastian County Chancery Court quieting title to a tract of land in appellees upon a finding of adverse possession. They contend that the chancellor's finding is clearly against the preponderance of the evidence. We find no error and affirm.

The parties are adjoining property owners in the Village Harbor Subdivision in Fort Smith. Appellees, Donald and Betty Hubbard, acquired title to a tract of land in the subdivision in 1980 and constructed a house thereon. Appellants purchased the vacant lot adjacent to appellees' property in 1987. They completed construction of a house and moved in the following year. In 1988, appellants brought this action to quiet title to their tract of land as against appellees because appellees were claiming to own a strip of land on appellants' property. Appellees answered and, by counterclaim, alleged that they had acquired title to the disputed strip by adverse possession. The trial court found in favor of appellees and quieted title to the disputed strip in them.

It is well settled that, in order to establish title by adverse possession, appellees had the burden of proving that they had been in possession of the property continuously for more than seven years and that their possession was visible, notorious, distinct, exclusive, hostile, and with intent to hold against the true owner. The proof required as to the extent of possession and dominion may vary according to the location and character of the land. It is ordinarily sufficient that the acts of ownership are of such a nature as one would exercise over his own property and

would not exercise over that of another, and that the acts amount to such dominion over the land as to which it is reasonably adapted. Whether possession is adverse to the true owner is a question of fact. *Hicks* v. *Flanagan*, 30 Ark. App. 53, 782 S.W.2d 587 (1990); *Clark* v. *Clark*, 4 Ark. App. 153, 632 S.W.2d 432 (1982). Although we review chancery cases *de novo* on the record, we do not reverse the decision of a chancellor unless his findings are clearly against the preponderance of the evidence, giving due deference to his superior position to judge the credibility of the witnesses and the weight to be given their testimony. *Hicks* v. *Flanagan, supra*; *Clark* v. *Clark, supra*; Ark. R. Civ. P. 52(a).

Here, appellees testified that they had occupied and maintained the strip of land in dispute since at least early 1981. Appellee Donald Hubbard testified that, believing that he owned the area in controversy, he began landscaping it in the fall of 1980. In the following spring, he planted junipers and maple and pine trees on the disputed strip. He thereafter sodded it with zoysia grass and planted rose and forsythia bushes on the tract. He testified that since 1981, he had mowed, raked, edged, and fertilized the area and had always considered the land to be his. Appellants countered and offered evidence that appellees' actions of dominion over the area were not extensive, continuous, or notorious. On this conflicting evidence, the court made the following findings of fact:

> Although the Court is cognizant that the [appellants] introduced an aerial photograph and other photographs in which no trees or shrubs are clearly visible, the Court is not convinced that very small trees and shrubs of the size which were planted in the disputed area would be visible in such photographs if they were present. It is also not convinced that [appellants'] witnesses who testified that they did not remember seeing grass, trees or shrubs on the lot adjacent to [appellees'] property in the early 1980's, would have necessarily realized that the disputed strip was, in fact, on [appellants'] adjacent lot rather than on [appellees'] property. The fact that some witnesses testified that [appellants'] lot was not mowed and construction materials were stored on it prior to the time when [appellant] built his home the Court does not find convincing, as

the witnesses could and probably were referring to that portion of the [appellants'] lot except for the narrow disputed area adjacent to [appellees'] driveway. The Court believes that a passerby would simply assume that the [appellants'] lot began just to the south of the disputed strip and would not assume that the disputed strip was part of [appellants'] lot.

On the other hand the [appellee] and several witnesses testified unequivocally that the grass, trees and shrubs had been planted in the disputed area and maintained since 1981.

The Court further finds that the planting of grass, trees and shrubs and maintaining them for a period of in excess of seven years is sufficient to put the world on notice that the [appellee] is claiming the property as his own. The [appellee] did not just mow the grass in the adjacent strip; he planted Zoysia grass on most of it and sodded Zoysia grass on a part of the rear portion. He also regularly mowed and edged it, and he planted trees and shrubs. It is obvious even from the aerial photograph that disputed strip adjacent to the [appellees'] driveway is being maintained in a much different manner than is the rest of [appellants'] adjacent lot and it also appears to the Court that the disputed strip appears to be part of [appellees'] property rather than [appellants'].

■ Appellants argue that because their property was "wild and unimproved" until appellants built their home in 1988, appellees could not claim any portion of the strip by adverse possession. We disagree. There was evidence from which the chancellor could find that appellees had landscaped the land, planting trees, shrubs, and grasses that were not indigenous to the land. Lands that have been so improved cannot correctly be described as wild until they have been allowed to revert to an original state of nature. *Schuman* v. *Martin*, 259 Ark. 4, 531 S.W.2d 26 (1975). Here, there was no such evidence.

■ Appellants also argue that the evidence shows that appellees only intended to claim to their true boundary line and that their acts were not of a hostile character. We cannot agree. The word hostile, as used in the law of adverse possession, must

not be read too literally. For adverse possession to be hostile, it is not necessary that the possessor have a conscious feeling of ill will or enmity toward his neighbor. *Vaughn* v. *Chandler*, 237 Ark. 214, 372 S.W.2d 213 (1963). Claim of ownership, even under a mistaken belief, is nevertheless adverse.

> The oft-repeated statement that adverse possession is a possession commenced in wrong but maintained in right, does not mean that the possessor must commence his possession with an intentional wrong, for the doctrine of adverse possession is intended to protect one who honestly enters into possession of land in the belief that the land is his own. [Citations omitted.]

*Barclay* v. *Tussey*, 259 Ark. 238, 241-42, 532 S.W.2d 193, 195 (1976). Here, there was sufficient evidence that appellees' possession was hostile in character, within the meaning of that term as used in the law of adverse possession.

We find no merit in appellants' arguments that, as they, and their predecessors in title, had paid taxes on the lot for more than seven years; as appellees are presumed to claim that land described in their warranty deed; and as appellees never enclosed the disputed strip by a fence, wall, or other barrier, the trial court erred in not quieting title to the disputed tract in appellants. In this case, these facts do not prevent appellees from acquiring title to the disputed tract as all the elements of adverse possession have been met.

From our *de novo* review of the record, we cannot conclude that the chancellor's finding that appellees had acquired title to the tract in dispute by adverse possession is clearly against the preponderance of the evidence.

Affirmed.

JENNINGS and ROGERS, JJ., agree.